**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ERLYN NUNEZ,** | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **CENTER FOR URBAN COMMUNITY SERVICES,** | |
| **Defendant.** | |

    **ERLYN NUNEZ,** Plaintiff, by and through her attorney, JOSEPH M. DASH,

complaining of the Defendant, alleges and says:

## PARTIES

1.      Plaintiff Erlyn Nunez is a resident of Mamaroneck, New York and therefore a citizen of The State of New York .

2.      Defendant Center for Urban Community Services (CUCS) is a social services agency which, upon information and belief, is formed under the laws of The State of New York. CUCS has a principal place of business located at 198 E 121st St, 5th Floor, New York, NY 10035.

3.      At all times and events described in this Complaint, Erlyn Nunez was an employee of CUCS.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331, because this action arises under the Constitution and laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 USCS § 2000e.

1

3.      This Court has personal jurisdiction over Center for Urban Community Services because Defendant resides in the City of New York, County of New York and Borough of Manhattan which is located within the jurisdictional boundaries of the Southern District of New York.

4.      Venue is proper in this Court pursuant to 28 USCS § 1391, as a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

## STATEMENT OF FACTS

5.      Plaintiff Erlyn Nunez is a woman of Dominican-American descent. Plaintiff was born and raised in the City of New York, Bronx County, Borough of the Bronx.

6.      At all times, and during all events described herein, Plaintiff was an employee of the Center Defendant Center for Urban Community Services (CUCS).

7.      During her employment with CUCS Plaintiff received yearly performance reviews.

6.      Between May 20, 2022 and August 1, 2022, Plaintiff was described in her performance review, and in conversation and written text, in derogatory and racially offensive terms by managers and supervisors of CUCS.

7.      In particular CUCS described Plaintiff using the term "Gangbusters." This word has a distinct, well recognized0 derogatory meaning by those working in urban areas of The City of New York. The prefix "gang" in the term "Gangbusters" is a racial stereotype that means an individual is from a poor, minority, over-policed urban neighborhood such as the Bronx. These

individuals usually display aggressive criminal behavior. In other words, CUCS described

Plaintiff as a youth from the ghetto who acted like a criminal.

8.      In conjunction with, and as amplification of their racial depiction of Plaintiff,

management at CUCS used additional derogatory terms to refer to Plaintiff. CUCS described

Plaintiff a "too assertive," "Needs to humble herself," and allegedly had "Issues with boundaries."

All of these terms are used to describe impoverished youth from ghetto neighborhoods in The

City of New York. These terms "Humble herself," "Too assertive," and "issues with boundaries"

highlight a attitude towards Plaintiff as an aggressive member of an ethnic group inhabiting a

crime-filled neighborhood like the Bronx.

9.      The language used in Plaintiff's performance review invoked racialized

stereotypes based on Plaintiff's race, national origin, and association with the Bronx community

and not to her actual job performance.

10.     Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission (EEOC) on or about March 14, 2023.

11.     The EEOC made no determination on Plaintiff's charges and issued a Right to Sue

letter dated January 7, 2026.

12.     Plaintiff has exhausted her administrative remedies.

13.     This Complaint is filed within ninety days of Plaintiff's receipt of the Right to Sue

letter, as required by 42 USCS § 2000e-5.

## CLAIMS FOR RELIEF

### Count I

### Employment Discrimination Based on Race
### in Violation of 42 USCS § 2000e-2

3

14. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 13 as if fully set forth herein.

15. Plaintiff is a member of a protected class based on race.

16. Plaintiff is a Dominican-American woman of Hispanic/Latino race.

17. Plaintiff was qualified for her position with CUCS.

18. Plaintiff was employed by CUCS and received a yearly performance review, demonstrating that she held a position with the organization.

19. Plaintiff suffered an adverse employment action.

20. Plaintiff received a negative performance review from CUCS.

21. The performance review contained racially discriminatory language, including the terms "Gangbusters," "Humble herself," "Too assertive," and "issues with boundaries."

22. The adverse employment action occurred under circumstances giving rise to an inference of discrimination based on race.

23. The language used in Plaintiff's performance review invoked racial stereotypes linking minority individuals from over-policed urban communities like the Bronx with aggression and criminality.

24. The term "Gangbusters" evokes associations with gangs and criminal activity; stereotypes disproportionately applied to minority individuals.

25. The terms "Humble herself," "Too assertive," and "issues with boundaries" reflect stereotypical characterizations of minority women as aggressive or difficult.

26. These characterizations were based on Plaintiff's race and her association with the Bronx, a predominantly minority community.

27.     As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including emotional distress, damage to her professional reputation, and other harm.

## Count II

## Employment Discrimination Based on
## National Origin in Violation of 42 USCS § 2000e-2

28.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

29.     Plaintiff is a member of a protected class based on national origin.

30.     Plaintiff is a Dominican-American woman of Dominican national origin.

31.     Plaintiff was qualified for her position with CUCS.

32.     As alleged above, Plaintiff was employed by CUCS and received a yearly performance review.

33.     Plaintiff suffered an adverse employment action.

34.     As alleged above, Plaintiff received a negative performance review containing racialized language.

35.     The adverse employment action occurred under circumstances giving rise to an inference of discrimination based on national origin.

36.     The language used in Plaintiff's performance review invoked stereotypes associated with Plaintiff's Dominican national origin and her upbringing in the Bronx, a community with a significant Dominican population.

37.     The terms "Gangbusters," "Humble herself," "Too assertive," and "issues with boundaries" reflect stereotypical characterizations of individuals of Dominican and Latino national origin as aggressive or lacking in professionalism.

38.    These characterizations were based on Plaintiff's national origin and her association with the Bronx community.

39.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including emotional distress, damage to her professional reputation, and other harm.

## Count III

### Race Discrimination in Violation of 42 USCS § 1981

40.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

41.    Plaintiff is a member of a protected class based on national origin, *i.e.* Plaintiff is a Dominican-American woman of Dominican national origin.

42.    Plaintiff was qualified for her position with CUCS.

43.    As alleged above, Plaintiff was employed by CUCS and received a yearly performance review.

44.    Plaintiff suffered an adverse employment action.

45.    As alleged above, Plaintiff received a negative performance review containing racialized language.

46.    The adverse employment action occurred under circumstances giving rise to an inference of discrimination based on national origin.

47.    The language used in Plaintiff's performance review invoked stereotypes associated with Plaintiff's Dominican national origin and her upbringing in the Bronx, a community with a significant Dominican population.

48.     The terms "Gangbusters," "Humble herself," "Too assertive," and "issues with boundaries" reflect stereotypical characterizations of individuals of Dominican and Latino national origin as aggressive or lacking in professionalism.

49.     These characterizations were based on Plaintiff's national origin and her association with the Bronx community.

50.     As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including emotional distress, damage to her professional reputation, and other harm.

## Count III

## Race Discrimination in Violation of 42 USCS § 1981

51.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52.     Plaintiff is a member of a protected class based on race.

54.     As alleged above, Plaintiff is a Dominican-American woman of Hispanic/Latino race.

55.     Plaintiff was subjected to intentional discrimination by Defendant.

56.     CUCS intentionally used racialized language in Plaintiff's performance review, including the terms "Gangbusters," "Humble herself," "Too assertive," and "issues with boundaries."

57.     This language was chosen deliberately to invoke racialized stereotypes about Plaintiff based on her race and association with the Bronx.

58.     The discrimination was based on Plaintiff's race.

7

59. The racialized language used in Plaintiff's performance review invoked stereotypes linking minority individuals from over-policed urban communities with aggression and criminality.

60. These stereotypes were applied to Plaintiff because of her race.

61. The discrimination affected Plaintiff's ability to make and enforce contracts, including her employment contract.

62. The discriminatory performance review affected the terms and conditions of Plaintiff's employment relationship with CUCS.

63. The review negatively impacted Plaintiff's standing with her employer and her ability to enjoy the full benefits of her employment contract.

64. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages, including emotional distress, damage to her professional reputation, and other harm.

## Count IV

### Hostile Work Environment Based on Race and National Origin in Violation of 42 USCS § 2000e-2

65. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

66. Plaintiff was subjected to unwelcome conduct based on her race and national origin by CUCS.

8

67.    The racialized language used in Plaintiff's performance review "Gangbusters," "Humble herself," "Too assertive," and "issues with boundaries" constituted unwelcome conduct based on Plaintiff's race and national origin.

68.    Plaintiff did not invite, encourage, or welcome this racialized characterization.

69.    The conduct was severe or pervasive.

70.    The racial language in Plaintiff's performance review was severe in that it invoked harmful stereotypes linking Plaintiff to criminality and aggression based on her race and national origin.

69.    The conduct affected a term or condition of Plaintiff's employment at CUCS.

70.    The discriminatory performance review negatively impacted Plaintiff's performance evaluation, which is a term and condition of her employment.

71.    The review potentially affected Plaintiff's compensation, opportunities for advancement, and job security.

72.    The hostile conduct created an abusive working environment that altered the conditions of Plaintiff's employment.

73.    Defendant knew or should have known of the conduct and failed to take corrective action.

74.    CUCS knew of the discriminatory conduct because the racialized language was included in Plaintiff's official performance review, which was prepared and issued by CUCS.

75.    Despite this knowledge, CUCS failed to take any corrective action to remedy the discriminatory conduct or prevent future discrimination.

76.    As a direct and proximate result of Defendant's creation and maintenance of a hostile work environment, Plaintiff has suffered damages, including emotional distress, damage to her professional reputation, and other harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that This Honorable Court enter judgment in her favor and against Defendant Center for Urban Community Services as follows:Compensatory damages against Defendant in an amount to be determined at trial for emotional distress, damage to reputation, and other losses resulting from Defendant's discriminatory conduct, pursuant to.

1.    Punitive damages against Defendant in an amount to be determined at trial to punish Defendant for its egregious discriminatory conduct and to deter future discrimination, pursuant to 42 USCS § 1981a.

2.    Punitive damages against Defendant in an amount to be determined at trial to punish Defendant for its egregious discriminatory conduct and to deter future discrimination, pursuant to 42 USCS § 1981a.

3.    Back pay against Defendant for lost wages and benefits from the date of the discriminatory conduct to the date of judgment, together with prejudgment interest.

4.    Front pay against Defendant for future lost wages and benefits if reinstatement is not feasible or appropriate.

5.    Reinstatement to Plaintiff's former position or other equitable relief as the Court deems appropriate.

6.    Injunctive relief prohibiting Defendant from engaging in discriminatory conduct based on race or national origin and requiring Defendant to implement policies and training to prevent future discrimination.

7.    Reasonable attorney's fees and costs incurred in prosecuting this action, pursuant to 42 USCS § 2000e-5.

8.    Prejudgment and post judgment interest as allowed by law.

9.    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  April 7, 2026
BROOKLYN, NEW YORK

/s/  JOSEPH M. DASH
JOSEPH M. DASH, ESQ.
Attorney for Plaintiff, Erlyn Nunez
480 39 Street, 2R
Brooklyn, NY 11232
T: 718-439-3600
F: 718-439-1452
joelaw11220@yahoo.com